UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| Scottsdale Insurance Company,<br><br>　　　　　　Plaintiff,<br><br>vs.<br><br>St. Louis County, Missouri,<br><br>　　　　　　Defendant. | Case No.<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT FOR DECLARATORY JUDGMENT

COMES NOW Plaintiff, Scottsdale Insurance Company, by and through its undersigned attorneys, Hinshaw & Culbertson, LLP and Terese A. Drew and Meagher & Geer, PLLP and Thomas H. Couch for its Complaint for Declaratory Judgment, states and alleges as follows:

1. Scottsdale Insurance Company ("Scottsdale") is in the business of selling insurance. It is an Ohio corporation with its principal place of business located in Arizona. It is therefore a citizen of Ohio and Arizona.

2. St. Louis County, Missouri ("the County") is a political subdivision of the State of Missouri. It is therefore a citizen of Missouri.

3. Scottsdale brings this action under 28 U.S.C. §§ 2201 and 2202 for declaratory relief regarding the parties' rights and obligations under an insurance policy described herein.

## JURISDICTION AND VENUE

4. Scottsdale issued to the County a Retained Limit Liability Insurance Policy for Public Entities, number PGS0000008, for the policy period January 1, 2016 to January 1, 2017 (the "Policy"). A true and correct copy of the Policy is attached hereto as Exhibit A.

5. Keith Wildhaber asserted employment-related claims against the County in an action entitled, *Keith Wildhaber v. St. Louis County, Missouri*, Case No. 17SL-CC00133, In the Circuit Court of St. Louis County, Missouri, 21st Judicial Circuit (the "Underlying Action").

6. The County has made payments, or has agreed to make payments, for the defense and settlement the Underlying Action, and contends that Scottsdale is obligated, under the Policy, to reimburse the County for some or all of such payments.

7. Scottsdale disputes that it is obligated to reimburse the County for the payments the County has made, or will make, to defend or settle the Underlying Action.

8. An actual and justiciable controversy exists between Scottsdale and the County over whether the Policy obligates Scottsdale to indemnify the County for payments made, or to be made, in connection with the defense and settlement of the Underlying Action, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

9. Venue is proper under 28 U.S.C. § 1391, because defendant resides in this district, and a substantial part of the events giving rise to this claim for declaratory relief occurred in this district.

10. This Court has jurisdiction under 28 U.S.C. § 1332, because plaintiff and defendant are citizens of different states.

## **GENERAL ALLEGATIONS**

11. On or about January 10, 2017, Keith Wildhaber, a police officer employed by the County for more than 20 years, filed a Petition in the Underlying Action seeking damages for alleged violations of the Missouri Human Rights Act. A true and correct copy of the Petition is attached hereto as Exhibit B.

12. The Petition stated in part:

This lawsuit is being brought by Plaintiff to seek redress for unlawful employment discrimination and retaliation. Plaintiff has worked as a police officer for Defendant St. Louis County from May 1994 to the present. Because of his gender/sex, Plaintiff has been subjected to – and continues to be subjected to – unlawful employment discrimination by being denied multiple promotions. Defendant's actions in denying Plaintiff multiple promotion opportunities for which he was qualified amount to a violation of the Missouri Human Rights Act ("MHRA"). Further, Defendant has retaliated against Plaintiff for engaging in activity that is legally protected by the MHRA. (Petition, ¶ 1, Attached as Exhibit B).

2

13. The Petition alleged two Counts for violation of the Missouri Human Rights Act. Count I was based on the alleged discriminatory acts of failing to promote Wildhaber to the position of Lieutenant. Count II was based on the alleged discriminatory act of retaliation.

14. Wildhaber's discrimination claim for failure to promote alleged that, despite ranking third on a list of qualified candidates, Wildhaber was passed over for promotion to a Lieutenant position on numerous occasions dating back to 2014. (Exhibit B, ¶¶ 15-35)

15. The Petition alleged that, in approximately February 2014, Wildhaber was informed by John Saracino, a member of the St. Louis County Board of Police Commissioners, that "command staff has a problem with your sexuality" and that if Wildhaber ever wanted to be promoted to Lieutenant "[he] should tone down [his] gayness." (Exhibit B, ¶ 22)

16. The Petition alleged that the County "refused to promote Plaintiff because he does not conform to the County's gender-based norms, expectations, and/or preferences." (Exhibit B, ¶ 34)

17. The Petition alleged that Wildhaber filed state and federal discrimination charges in the spring of 2016. The Petition further alleges that the exercise of legally protected activity in filing discrimination charges was a factor "in Defendant's decision to transfer Plaintiff" and "in Defendant's ongoing failure to promote Plaintiff to the rank of Lieutenant." (Exhibit B, ¶¶ 58-59)

18. Wildhaber filed a First Amended Petition in the Underlying Action on June 25, 2019 ("Amended Petition"). A true and correct copy of the Amended Petition is attached as Exhibit C. The Amended Petition included additional allegations and information, including the identities of other officers that were promoted to the position of Lieutenant, and the timing of such promotions, where Mr. Wildhaber was denied such promotion.

19. Prior to the Underlying Action going to trial, Wildhaber offered to settle his lawsuit against the County, and such offer was rejected by the County.

20. Prior to trial in the Underlying Action, County officials decided to set a reserve equal to 50% of the amount of liability that County officials determined the County might owe to Wildhaber under a worst case scenario.

21. County officials determined that liability may reach $1,450,000, with that figure comprised of $850,000 of damages in accordance with Wildhaber's $850,000 settlement demand, and $300,000 to $600,000 in attorney fees that might be awarded to Wildhaber. The County set its reserve for 50% of that amount, which equaled $725,000.

22. The County did not notify Scottsdale of the Underlying Action at any time before trial.

23. The Underlying Action went to trial in October 2019. The jury returned a verdict in favor of Wildhaber on Count I of his Petition, and awarded $1.98 million in compensatory damages and $10 million in punitive damages. The jury also found in Wildhaber's favor on Count II of his Petition, and awarded $990,000 in compensatory damages and $7 million in punitive damages.

24. On October 25, 2019, the Court in the Underlying Action entered a Judgment against the County for $19,970,000. A true and correct copy of the Judgment is attached as Exhibit D.

25. On November 22, 2019, the Court in the Underlying Action entered an Amended Judgment, which included an award of plaintiff's attorney fees of $673,530, and costs of $7,896.67, along with post-judgment interest of 6.5%. A true and correct copy of the Amended Judgment is attached as Exhibit E.

26. The County first notified Scottsdale of Wildhaber's lawsuit via an email from the Thomas McGee Group dated November 20, 2019 (the "Late Notice"). A true and correct copy of the Late Notice is attached as Exhibit F.

27. The Late Notice stated, in part, that Plaintiff Keith Wildhaber, "brought suit against St. Louis County in 2017 for alleged employment practices liability that reportedly began in 2014." (Exhibit F)

28. The Late Notice further stated, "[D]amages, including punitive damages, of approximately $19,000,000.00 were awarded." (Exhibit F)

28. The Late Notice stated that the claim was, "being reported to all excess policies held by St. Louis for the years 2014-2019." (Exhibit F)

29. A post judgment mediation was held between Wildhaber and the County on January 30, 2020.

30. Upon information and belief, a settlement was reached between Wildhaber and the County, with the County agreeing to pay Wildhaber the sum of $10,250,000.

31. The Judgment (Exhibit D) and Amended Judgment (Exhibit E) in the Underlying Action have been vacated by the court.

## COUNT I

## DECLARATORY RELIEF – NO DUTY TO INDEMNIFY

### (Breach of Notice Conditions)

32. Scottsdale restates and incorporates herein the allegations of paragraphs 1 through 31 above.

33. The Policy, at Section VI.E.2, expressly states, as a condition to coverage, that the insured must notify Scottsdale, "as soon as practicable" if a "**claim** is made against any insured." (Exhibit A, Form PGS-P-1 (1-11), p. 13)

34. The Policy, at Section IV.F.1. and 2., defines "claim" to mean "a written demand for monetary damages or non-monetary relief" and a "lawsuit or other civil proceeding commenced by the service of a complaint or similar proceeding." (Exhibit A, Form PGS-P-1 (1-11), p. 4)

35. Wildhaber filed discrimination charges against the County with an administrative

agency in April of 2016.

36. Wildhaber filed his original Petition in the Underlying Action on January 10, 2017.

37. The administratively-filed discrimination charges and the original Petition qualify as "claims" under the Policy, thus requiring the County to provide Scottsdale with notice, "as soon as practicable."

38. The County did not provide notice of Wildhaber's discrimination charges or Petition to Scottsdale until after the jury had returned its verdict and a judgment exceeding $19 million had been entered in the Underlying Action.

39. The Late Notice by the County to Scottsdale on November 19, 2019 breached the Policy conditions, because the Late Notice was not "as soon as practicable" after Wildhaber asserted his claim and filed the Underlying Action.

40. Prejudice to Scottsdale as a result of the County's breach of the notice condition is presumed.

41. Aside from presumed prejudice, Scottsdale was materially and substantially prejudiced by the County's Late Notice, including, but not limited to, in the following ways: being deprived of its right to participate in the defense of the Underlying Action; being deprived of the opportunity to investigate facts as they developed through discovery in the Underlying Action; being deprived of the opportunity to participate in the selection of experienced defense counsel to represent the County in the Underlying Action; being deprived of the opportunity to hire its own defense counsel to associate with the County's attorneys in the Underlying Action; being deprived of the opportunity to participate in settlement discussions and/or negotiations in the Underlying Action; and, being deprived of the opportunity to participate in trial strategy in the Underlying Action.

42. As a result of the prejudice sustained by Scottsdale from the County's breach of Section VI.F.1. and 2. of the Policy, Scottsdale is entitled to a judgment declaring that it has no

duty to indemnify the County for any amounts that it paid to defend or settle Wildhaber's claims in the Underlying Action.

43. The Policy, at section VI.E.1., also expressly states, as a condition to coverage, that the insured must notify Scottsdale, "as soon as practicable" of any, "**employment practices wrongful act** which may result in a **claim** or suit that may exceed fifty (50%) of your retained limit." (Exhibit A, Form PGS-P-1 (1-11), p. 13)

44. The Policy, at section and VI.E.5.a., entitled "Special Serious Claims Reporting Requirements," also expressly states, as a condition to coverage, that the insured must provide notify Scottsdale, "as soon as practicable" of all, "**employment practices wrongful acts** * * * or **claims** of which you become aware which involve: a. In your judgment or the judgment of your defense counsel, you believe your exposure exceeds or may exceed fifty percent (50%) of the **retained limit**." (Exhibit A, Form PGS-P-1 (1-11), p. 13)

45. The "retained limit" in the Policy is $2,000,000, and therefore 50% of the retained limit is $1,000,000.

46. Prior to trial in the Underlying Action, the County determined that Wildhaber's claim may exceed $1,000,000.

47. That determination triggered the County's additional obligations under Sections VI.E.1. and VI.5.a. to provide notice to Scottsdale as soon as practicable.

48. The County did not provide notice to Scottsdale until November 19, 2019, which was after trial and after a judgment exceeding $19 million was entered in the Underlying Action.

49. The County's Late Notice to Scottsdale was not "as soon as practicable" and therefore breached the conditions set forth in Sections VI.E.1. and VI.5.a. of the Policy.

50. Prejudice to Scottsdale as a result of the County's breach of the notice condition is presumed.

51. Aside from presumed prejudice, Scottsdale was materially and substantially prejudiced by the County's Late Notice, including, but not limited to, in the following ways:

being deprived of its right to participate in the defense of the Underlying Action; being deprived of the opportunity to investigate facts as they developed through discovery in the Underlying Action; being deprived of the opportunity to participate in the selection of experienced defense counsel to represent the County in the Underlying Action; being deprived of the opportunity to hire its own defense counsel to associate with the County's attorneys in the Underlying Action; being deprived of the opportunity to participate in settlement discussions and/or negotiations in the Underlying Action; and, being deprived of the opportunity to participate in trial strategy in the Underlying Action.

52. As a result of the prejudice sustained by Scottsdale from the County's breach of Sections VI.E.1. and VI.E.5.1. of the Policy, Scottsdale is entitled to a judgment declaring that it has no duty to indemnify the County for any amounts that it paid to defend or settle Wildhaber's claims in the Underlying Action.

## COUNT II

### DECLARATORY RELIEF – NO DUTY TO INDEMNIFY

### (Employment Practices Wrongful Acts Committed Outside of Policy Period)

53. Scottsdale restates and incorporates herein the allegations of paragraphs 1 through 52 above. Further, the claim for declaratory relief made in this Count II is plead either in addition to, or in the alternative to, all other claims for declaratory relief made in this Complaint.

54. The Policy provides various coverages, including liability coverage for employment practices wrongful acts, subject to a limit of $10,000,000 for "any one **Employment Practices Liability Wrongful Act** in excess of your **Retained Limit.**" The Retained Limit is $2,000,000.

55. The Policy's insuring agreement states in relevant part that Scottsdale will pay on County's behalf, "**loss** that you become legally obligated to pay on account of any **employment practices wrongful act** you committed during the **policy period**." (Exhibit A, Form PGS-P-1 (1-11), p. 1)

56. The Policy period was January 1, 2016 to January 1, 2017.

57. Wildhaber alleged that, the County committed employment practices wrongful acts during time periods outside of January 1, 2016 to January 1, 2017.

58. The Policy's insuring agreement does not cover any loss the County becomes legally obligated to pay on account of any Employment Practice Wrongful Act committed outside the policy period of January 1, 2016 to January 1, 2017.

59. Scottsdale is entitled to a declaration that the Policy does not provide coverage to the County for any loss on account of Employment Practices Wrongful Acts committed outside of the policy period of January 1, 2016 to January 1, 2017.

## COUNT III

## DECLARATORY RELIEF – NO DUTY TO INDEMNIFY

### (Series of Employment Practices Wrongful Acts Treated as Single Act)

60. Scottsdale restates and incorporates herein the allegations of paragraphs 1 through 59 above. Further, the claim for declaratory relief made in this Count III is plead either in addition to, or in the alternative to, all other claims for declaratory relief made in this Complaint.

61. The Policy, at Section III.D., states in relevant part: "All applicable * * * **employment practices wrongful acts** * * * shall be treated as a single * * * **employment practices wrongful acts** * * * and the Limit of Insurance in effect as of the date of the first such * * * **employment practices wrongful acts** * * * shall apply to all such * * * **employment practices wrongful acts.**" (Exhibit A, Form PGS-P-1 (1-11), p. 3) The Policy, at Section IV.EE.c., states: "All **employment practices wrongful acts** arising out of continuous, repeated, or related **employment practices wrongful acts** shall be treated as a single **employment practices wrongful act** and the **retained limit** in effect at the time of the first **employment practices wrongful act** shall apply." (Exhibit A, Form PGS-P-1 (1-11), pp. 7-8)

62. Wildhaber's Petition alleged that the County committed a series of employment practices wrongful acts against him.

63. Wildhaber's Petition alleged that the first employment practices wrongful act committed by the County against him occurred in 2014.

64. Under Sections III.D., and IV.EE.c., all of the employment practices wrongful acts committed by the County against Wildhaber are treated as a single employment practices wrongful act, and the coverage limit and retained limit in effect at the time of such first act are applicable.

65. The Policy was not in effect at the time the first employment practices wrongful act was committed by the County against Wildhaber in 2014.  Because such employment practice wrongful act was not committed during the policy period of January 1, 2016 to January 1, 2017, the Policy does not apply.

66. Scottsdale is entitled to a declaration that the Policy does not provide coverage for any loss on account of the series of employment practices wrongful acts committed by the County against Wildhaber, because they are treated as a single employment practice wrongful act, the first of which was committed prior to the inception of the Policy.

## COUNT IV

## DECLARATORY RELIEF – NO DUTY TO INDEMNIFY

**(Punitive or Exemplary Damages)**

67. Scottsdale restates and incorporates herein the allegations of paragraphs 1 through 66 above.  Further, the claim for declaratory relief made in this Count IV is plead either in addition to, or in the alternative to, all other claims for declaratory relief made in this Complaint.

68. The Policy defines "Loss" to include punitive or exemplary damages, but only "if and to the extent that such punitive or exemplary damages are insurable under applicable law."

69. In the Underlying Action, Wildhaber sought, and the jury awarded, punitive damages totaling $17,000,000 and compensatory damages totaling $2,970,000.

70. Upon information and belief, the County settled Wildhaber's claims for $10,250,000.

71. Upon information and belief, the Judgment and Amended Judgment have been vacated.

72. Insurance coverage for punitive or exemplary damages is contrary to the public policy of Missouri, as explained in *Crull v. Gleb*, 382 S.W.2d 17 (Mo. Ct. App. 1964). The purpose of punitive damages is to punish and deter wrongful conduct, and such purposes would be thwarted by allowing the insured to be indemnified for punitive damages under an insurance policy.

73. Scottsdale is entitled to a declaration that the Policy does not provide coverage for those payments made by the County to Wildhaber for the release of his claim for punitive or exemplary damages, because such damages do not qualify as "**loss**" as defined in the Policy.

## COUNT V

## DECLARATORY RELIEF – NO DUTY TO INDEMNIFY

### (Retained Limit)

74. Scottsdale restates and incorporates herein the allegations of paragraphs 1 through 73 above. Further, the claim for declaratory relief made in this Count V is plead either in addition to, or in the alternative to, all other claims for declaratory relief made in this Complaint.

75. The Policy provides coverage only for covered loss in excess of the "retained limit."

76. The "retained limit" in the Policy is $2,000,000, representing the amount of covered loss that the County must incur before implicating coverage under the Policy.

77. Wildhaber alleged that the County committed a series of employment practices wrongful acts over approximately a five-and-one-half year period from February 2014 to the time of trial in October 2019.

78. The Policy was in effect only for a one-year period of January 1, 2016 to January 1, 2017.

79. The vast majority of employment practices wrongful acts alleged to have been

committed by the County against Wildhaber were committed outside of the Policy period of January 1, 2016 to January 1, 2017.  Any "loss" on account of such employment practices wrongful acts is not covered by the Policy.

80. Assuming that "loss" on account of the employment practices wrongful acts committed during the Policy period of January 1, 2016 to January 1, 2017 could be covered by the Policy (which is expressly denied upon grounds alleged elsewhere in this Complaint), the amount of such covered "loss" on account of acts committed during the Policy period of January 1, 2016 to January 1, 2017 is less than the $2,000,000 retain limit.

81. Pleading solely in the alternative, Scottsdale is entitled to a declaration that the portion of the $10,250,000 settlement representing "loss" on account of employment practices wrongful acts committed during the Policy is less than the Policy's $2,000,000 retain limit, and therefore Scottsdale has no obligation to indemnify the County for any part of the amounts it has paid, or promised to pay, in its settlement with Wildhaber.

82. Pleading solely in the alternative, Scottsdale is entitled to a declaration regarding the amount of the $10,250,000 settlement that is covered by the Policy and that exceeds the $2,000,000, together with a declaration that Scottsdale's indemnity obligation is limited to such excess amount.

## **PRAYER FOR RELIEF**

WHEREFORE, on its Complaint for Declaratory Judgment, Plaintiff Scottsdale Insurance Company hereby requests that the Court enter judgment in its favor and against Defendant as follows:

1. Declaring that Scottsdale has no obligation to indemnify St. Louis County for any payments made to defend or settle the Underlying Action;

2. Granting such other relief as the court finds just and equitable.

PLAINTIFF HEREBY DEMANDS A JURY TRIAL

Respectfully submitted,

**HINSHAW & CULBERTSON LLP**

By:       */s/Terese A. Drew*
TERESE A. DREW   #32030
701 Market Street, Suite 1375
St. Louis, MO  63101-1843
Phone:  (314) 241-2600
Fax:  (314) 241-7428
tdrew@hinshawlaw.com

MEAGHER & GEER, PLLP

/s/ Thomas H. Crouch
Thomas H. Crouch
16767 N. Perimeter Dr., Ste. 210
Scottsdale, AZ  85260
Tel: (480) 624-8568
Fax: (480) 222-6678
tcrouch@meagher.com
*Pro Hac Vice pending*

*ATTORNEYS FOR PLAINTIFF SCOTTSDALE INSURANCE COMPANY*